OSIE A. RAYMOND v. THE CITY OF WICHITA.

No. 13,822.   (79 Pac. 323.)

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Prescriptive Rights—Ejectment—Estoppel.* A strip
of land 114 feet wide, adjacent to, but outside of, an incorpo-
rated city, was used by the traveling public for many years as
a highway without objection from the owner of the soil. It was
then brought into the city limits and its use as a street con-
tinued to the same extent as before. In an action of ejectment
against the city by the owner of the fee to recover the land so
used, it is *held,* that the change of the highway from a country
road to a city street did not affect the rights which the public
gained in the way of user, nor in any manner make the ac-
quiescence in such use by the claimant less effective as an estop-
pel against him.

2. ———— *Common-law Dedication—Evidence.* Where a common-
law dedication of a highway is asserted against an owner of
land over which the highway runs, evidence that the governing
authorities of a city laid sidewalks on each side of the road,
established its grade, and otherwise improved it, without objec-
tion from the owner, although at the time it was beyond the
city limits, is competent as tending to show an assertion by the
public of rights of user over the traveled way adverse to the
owner of the soil.

3. ———— *Prescriptive Rights—Improper Restrictions.* A street
was laid out 114 feet wide. When it reached the city limits a
road of the same width was used by the traveling public as a
continuation of the street to gain access to, and egress from, a
bridge over a river. A road 60 feet wide was established by the
county commissioners from the bridge to the city limits, the
length of the traveled way, but was never worked or improved
by the county authorities. Public travel was not confined to the
boundaries of the county road. *Held,* that the rights of the
public were not restricted to the 60-foot strip by adverse user
when it appeared that other portions of the strip 114 feet wide,
out of which the 60-foot road was established, were for a long
period continuously used as a highway to the same extent as the
road laid out by the county.

Error from Sedgwick district court; PRESTON B.
GILLETT, judge *pro tem.* Opinion filed January 7,
1905. Affirmed.

Raymond v. Wichita.

THIS was an action of ejectment brought by Osie A. Raymond to recover from the city of Wichita a strip of land 54 feet wide by 431 feet long, being the north 54 feet of what is known as Douglas avenue, in the city of Wichita, between Wichita street and Waco avenue.

In 1871 William Griffenstein acquired land on the south of what is now the north line of Douglas avenue, and laid out Griffenstein's first addition to Wichita, which extended from Lawrence avenue on the east to Water street on the west, and on the north to the north line of Douglas avenue. Douglas avenue was dedicated to the public in this addition to the width of 114 feet between the streets mentioned. In 1872 Griffenstein platted his second addition, in effect extending the first addition 300 feet west. In this second addition he dedicated Douglas avenue on the plat to the use of the public, 114 feet wide and extending west to the middle of Wichita street in Waterman's addition to the city. West of Wichita street, and north of the tract of land marked "county road" on the map, is the tract in controversy. For a better understanding of the controversy reference is made to a map of the ground in dispute, on a scale much reduced from the one used on the trial.

The land now claimed by the city as a part of Douglas avenue, embracing the tract marked "county road" on the map and the strip 54 feet wide north of it, between Wichita street and Waco avenue, about 600 feet long, was never platted. In 1886, by petition of the mayor and council to the judge of the district court, land south of Douglas avenue extended west was taken into the city, leaving the tract 114 feet wide and 600 feet long, within which is the land in dispute, out of

the corporate limits at the special request of the mayor and council. This strip, 114 feet by 600 feet, was never a part of the city of Wichita until 1888, and before that time formed a part of Wichita township.

At the west end of this strip 114 feet in width a toll-bridge was erected across the Arkansas river in 1872, crossing the stream in a southwesterly direction. The bridge was sold to Sedgwick county in 1877. Before 1872 there was a ford across the Arkansas river a short distance south of where the bridge was afterward built, and a cattle trail running from the ford eastwardly south of Douglas avenue. After the building of the bridge, which was about 77 feet wide, travelers from the west and southwest of the city on crossing the river passed over the 114-foot strip lying west of the west end of Douglas avenue. The travel was not confined to any particular part of the strip, although it is probable that the south side of it was more in use because of the bridge's being at the southwest corner. The travel over the strip was kept up continuously until the commencement of this action.

The board of county commissioners never caused any work to be done on the strip, nor did the road-overseers in Wichita township perform any labor thereon.

In 1884 Griffenstein petitioned the city to take the land into the corporate limits, designating it as Griffenstein's ninth addition, tendering a plat. Griffenstein was mayor at the time. The city council refused to approve the plat.

In January, 1885, a petition in due form was presented to the board of county commissioners, signed by persons living in the vicinity of the land, asking that a county road be laid off on the south part of said strip from the west end of Douglas avenue to the

northeast corner of the bridge across the Arkansas river.   Griffenstein and wife filed written consent for the appropriation of so much of the land as the board of county commissioners should deem necessary for the road.   In pursuance of the petition the county commissioners laid off and opened a road 60 feet wide, over the south side of said strip, from the west end of Douglas avenue on the east to the bridge on the west, leaving the land in dispute lying on the north side of the road.

In May, 1888, the city of Wichita, by an ordinance approved by a decree of the district court of Sedgwick county, enlarged and defined its boundaries and took into its corporate limits the strip of land over which the road was laid out by the county commissioners, and also the strip of land in dispute, and has ever since exercised authority over all of it, and its street commissioners have improved and worked it.   It was brought into the city just fourteen years before this action was begun.

In July, 1886, Griffenstein and wife transferred the land in controversy to William C. Boeling, a resident of Missouri, who was never afterward in the city of Wichita.   In 1894 Boeling transferred it to plaintiff below, a resident of Oklahoma.

There was never any express dedication of the property in dispute by Griffenstein, or his grantee, by deed, or writing, or orally.   The case was tried to a jury in the court below.   Testimony was introduced tending to show that Douglas avenue, where the land in dispute is situated, had been used continuously as a public street and traveled to its present width from 1872 until the time of the trial.   On the south side of Douglas avenue, between Wichita street and Waco avenue, several buildings were erected as early as 1873, among

them a packing-house and a stone-yard. Between
Wichita street and Waco avenue a lumber-yard was
situated in 1886, fronting on the land in question.
Walks were laid across Douglas avenue and a ditch
dug through the strip in dispute along its north side
as early as 1874, and grading was done by the city
authorities. In 1872, by resolution of the city coun-
cil, a wooden sidewalk twelve feet wide was ordered
laid on each side of Douglas avenue, commencing at
the depot of the Wichita & Southwestern Railroad
Company and running thence west to the Arkansas
river.

In 1874 Griffenstein sold and conveyed the land
owned by him south of Douglas avenue and abutting
on the strip 114 feet wide between Wichita street and
Waco avenue, the north 54 feet of which is the land
in controversy.

In 1882 an ordinance was passed by the city council
of Wichita, and approved by the mayor, granting the
right of way to a water company to extend its mains
"on Douglas avenue from bridge near Arkansas river
to east side of depot." This gave the right of way
over the 114-foot strip now known as a part of Doug-
las avenue. The ordinance was signed by Griffen-
stein, who was then mayor. While he was mayor, in
1878, Griffenstein signed an ordinance passed by the
city council establishing the grade of Douglas avenue
over the land in dispute. In 1887, while Griffenstein
was mayor, an ordinance was passed granting a street-
railway company the right to construct its line upon
and over all the streets and alleys of the city. Later,
tracks were laid and cars run over the 114-foot strip,
a part of which is in dispute. The evidence showed
that the land in controversy was not assessed for taxa-

tion in the city of Wichita from the year 1885 to the beginning of the action.

A verdict was rendered in favor of the city, and judgment entered thereon. Plaintiff below has prosecuted error to this court.

*Dyer & Davis*, and *Harris & Harris*, for plaintiff in error.

*Earl Blake*, city attorney, and *W. A. Ayres*, for defendant in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J. : It is unnecessary in arriving at a conclusion to comment on each of the fifteen assignments of error contained in the brief of counsel who contend for a reversal of the judgment. A general discussion of the rules of law applicable to the facts will be sufficient.

The chief contention of plaintiff below in the trial court, and renewed here, was that the city of Wichita gained no rights to the land which is the subject of the action prior to May, 1888, when it was brought into the corporate limits. A further claim of plaintiff below, formulated into an instruction, which the court refused, is to the effect that if the county commissioners in 1885 laid out a highway 60 feet wide south of the land in controversy, which was equally as well adapted for road purposes as the strip adjoining it on the north, and there was no necessity shown for the public to travel out of such legally established highway, then the jury should have inferred that travel over the disputed strip was an accident merely, and did not show an intentional motive to claim adversely.

Counsel for plaintiff in error admitted on the trial

34—70 KAN.

that if Griffenstein made either a common-law dedi-
cation or a grant of this property for public purposes
before it came into the city limits the city took the
same rights that the dedicator gave.   Counsel said :

"We further admit that if it was a title to a spe-
cific piece of ground referred to had been acquired by
the public, if there is such a thing as title by pre-
scription in a highway, before it came into the city,
the city would take the same and no further rights
than the county had prior to that time.   They would
just step into the shoes of the county."

This concession is in accord with the rule found in
Elliott on Roads and Streets, section 116.   No ex-
press grant by Griffenstein is relied on, but a com-
mon-law dedication only, operating by way of estoppel
*in pais;* nor is there any claim of express acceptance
of the strip in question for the uses of a road or street
by the public authorities.

It cannot be denied that the owner of suburban
property might by his conduct estop himself from
denying that a strip of land through his farm of the
present width of Douglas avenue had been acquired
as a road by continuous and uninterrupted public use,
to his knowledge, after many years of travel over it.
Griffenstein, in 1871 or 1872, platted his first addition
east of the land involved in this action.   It extended
to the north line of Douglas avenue.   He dedicated a
strip 114 feet wide as a street ( Douglas avenue) from
Lawrence avenue on the east to Water street on the
west.   Again, in 1872 he platted his second addition,
extending Douglas avenue 300 feet west of Water
street, to the width of 114 feet.   He thus made Doug-
las avenue, 114 feet in width, abut at the west end on
the tract in question, which is but fifty-four feet wide.
All the time from 1872 until 1902 the public used
the land as a road or street (an extension of Douglas

avenue) to the width of 114 feet, with Griffenstein's knowledge, until 1886, and without interference by the subseqent proprietors.

Much stress is placed on the fact that the county in 1885 laid out a public road 60 feet wide south of the land in controversy and within the strip 114 feet wide.   It is contended that the rights of the public were fixed and concluded by this, and that any adverse user of the land adjacent to this county road on the north could not affect the rights of Griffenstein or subsequent owners.   There was testimony tending to show that the establishment of this road did not confine public travel to the land within its boundaries ; that pedestrians, teams and vehicles going to and coming from the Arkansas river bridge traveled as much on one side of the 114-foot strip as on the other, to the knowledge of Griffenstein.   He seems to have made no objection or protest against such use of his property, and asserted no claim of ownership adverse to the public, except in one instance when in 1884 he tendered a plat of the strip in controversy and petitioned the city council to take it into the corporate limits as Griffenstein's ninth addition, which the governing body of the city refused to do.   After this denial of his petition he asserted no dominion over the strip of land.   It was shown not to have been assessed for taxes since 1885.   In 1874 Griffenstein conveyed property owned by him abutting on the strip 114 feet wide, the north part of which is in controversy.

His other acts while mayor, set forth in the statement, in recognition of the public character of the west end of Douglas avenue to the full width now claimed by the city, were competent evidence showing that adverse user of it was known to, and acquiesced in by, him.   (*Ritchie v. City of South Topeka*, 38 Kan. 368, 16 Pac. 332.)

It was a question of fact whether the attitude of Griffenstein respecting this land was such as to induce a belief that he intended to dedicate it to highway purposes. (13 Cyc. 485.) This question was submitted to the jury, with all the circumstances showing his acquiescence while the public occupied and used his property, at first for a road, and afterward for a street.

"It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." (Ell. Roads & Str. § 124.)

In section 126 of the work last cited the author comments on the rule of law that dedication may exist although the owner may have a secret intent not to dedicate, on the principle that a man is presumed

to intend the usual and natural consequences of his acts.   In this case the jury, deducing intent from acts, might justly have decided that a certain design and motive existed from outward evidence, when in fact the secret and undisclosed purpose of Griffenstein was directly contrary.

The acts of the mayor and council in reaching beyond the limits of the municipality and improving the extension of Douglas avenue before it was brought into the city were competent evidence tending to show that as against Griffenstein the public asserted rights in and over the strip.   The public use after the strip became a part of the city did not differ from the public use from 1872 until it was included within the city limits.   The mere fact that after it had been used as a country road for many years its character was changed to a city street did not affect the rights which the public gained in the land for a thoroughfare, nor in any manner make the acquiescence of Griffenstein in such use less effective as an estoppel against him. In *Cemetery Association v. Meninger*, 14 Kan. 312, 316, Justice Brewer, speaking for the court, said :

"No formal acceptance by any particular authorities is essential.   The mere user by the public may be of such a character as to constitute an acceptance. Indeed, such user by the public with the knowledge of the owner may be sufficient evidence of both the dedication and the acceptance.   We know this doctrine is denied by some courts, but it seems to us to rest upon the soundest principles."

The appropriation of the highway by persons traveling over it was evidence of a dedication, whether the users resided in or out of the city.   Proof of the use of the way by inhabitants of Missouri, Arkansas or Texas would have been competent in support of a common-law dedication by the owner of the soil.

In section 154 of Elliott on Roads and Streets, under the head of "Acceptance by Public Use," the author says :

"The 'town, county, or parish,' using Professor Greenleaf's terms, is represented by the town, county or parish officers, but the officers are not the corporation. The municipal corporation consists of the inhabitants and not the officers ; the officers are, in truth, nothing more than the agents of the corporation. The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter. The inhabitants of a locality having by long-continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them. Creating towns, cities, and other public corporations, is 'but the investing the people of the locality with the government thereof,' and they may themselves exercise the powers of government of highways quite as effectually by continued use as by any other method."

The traveling public appropriated the highway. That at a certain period of time after the use began the city took jurisdiction over it is immaterial if the use was continued.

We have examined the instructions given and those refused, and given attention to the alleged erroneous action of the court in admitting evidence, and find nothing requiring a reversal of the judgment. It is affirmed.

All the Justices concurring.