[No. 25196.   Department Two.   September 26, 1934.]

THE CITY OF SPOKANE, *Respondent*, v. SPOKANE
COUNTY, *Appellant*.[1]

[1] Reported in 36 P. (2d) 311.

*C. W. Greenough* and *A. O. Colburn,* for appellant.
*G. M. Ferris* and *Louis A. Conyard,* for respondent.
*A. C. Van Soelen* and *John A. Homer, amici curiae.*

GERAGHTY, J.—In this action, the city of Spokane seeks recovery from Spokane county of a portion of certain remittances received by the county from the state treasurer pursuant to the provisions of § 5 of chapter 41 of the 1933 Session Laws, p. 212, as amended by chapter 168, p. 633, passed at a later date in that session.

Chapter 88 of the 1929 Session Laws, p. 159 (Rem. Rev. Stat., §§ 6851-1 *et seq.*), provided for the collection of an additional excise tax of one cent per gallon on liquid fuel, and the payment of the sum realized therefrom into a fund in the state treasury to be known as the lateral highway fund. The moneys coming into this fund were to be credited to the various counties of the state in the manner and in the proportions set out in § 5 of the act (Rem. Rev. Stat., § 6851-5). The plan of division to the counties contained a proviso that one-third of the money to which any first class county was entitled should be placed in the lateral highway fund to the credit of first class cities within such county, to be spent by the governing authorities of the cities for the construction or improvement of arterial streets or highways leading to and connecting, directly or indirectly, with any state highway.

Chapter 41 of the 1933 Session Laws, p. 208, revised or repealed many of the then existing statutory provisions relating to public highways, and specifically amended § 5 of chapter 88, Laws of 1929, p. 162. The

section, as amended, retained the provision for the collection of an additional one cent gasoline tax, payable into the lateral highway fund. It also provided for the transfer to this fund of certain moneys from the motor vehicle fund. As provided in the amended § 5, the lateral highway fund was to be distributed during the period ending July 1, 1933, in the manner provided for in the original section, including a distribution to first class cities in the first class counties. For the period beginning January 1, 1934, and ending March 31, 1935, chapter 41 provided that all moneys accruing to the lateral highway fund should be credited to the counties of the state in accordance with a schedule of percentages specified in the act. Then followed one of the provisions involved in the present controversy:

"From the monies remitted to the respective counties under the provisions of this section there shall be paid to the first, second and third class cities, and cities with a commission form of government whose population would entitle them to at least the rank of third class cites, within each respective county, an amount of money equal to ten one-hundredths of one per cent of the assessed valuation of such city or town, which money shall be expended by the governing authorities of such cities and towns for the construction and/or maintenance of any street or highway therein, such expenditure to be made either independently or in conjunction with any other monies that may be provided by such cities and towns." Laws of 1933, p. 214.

Later in the 1933 session, chapter 168 was passed, again amending § 5 in some of its features, but retaining the provision for payment of cities of the first, second and third classes, and adding another proviso as follows:

"*Provided further,* That the county commissioners of any county in this state shall pay from the money remitted to it under the provisions of this section to

any first, second or third class city or city with a commission form of government whose population would entitle it to at least the rank of a third class city within such county, an additional ten-hundredths of one per cent, which shall be expended by such city for the payment of interest or principal of warrants or bonds issued or to be issued for the condemnation of property for, or the construction of, roads, streets or bridges within such city, or for any other proper road or street purpose." Rem. 1934 Sup., § 6851-5 [P. C. § 6815-35].

Pursuant to these statutory provisions, the state treasurer made remittances to Spokane county for the months of January, February and March, 1934. The city of Spokane made demand upon the county for its share under the law of the sums so remitted from the lateral highway fund, and, upon the refusal of the county to make payment, this suit was instituted. The case was tried to the court, and judgment rendered in favor of the city. This appeal follows.

The county, while itself taking under the law, contends that the provisions requiring it to share with the city are invalid for several reasons. The principal objection made is that the title of the chapter is not sufficiently definite to apprise the public of the matter contained in the act; it being urged that, in the title, the term "public roads" is used, conveying the implication that the act has relation to county roads solely, and that, therefore, the provision for distribution to the cities for use upon streets is not within its purview.

In considering the three acts here involved—that is to say, chapter 88 of the 1929 session, and chapters 41 and 168 of the 1933 session—we find that in the title to chapter 88 the term "public highways" is used; in chapter 41 the term "public roads;" and again in chapter 168 the term "public highways." In these

several acts, dealing generally with the same subject matter, the legislature has used the terms "public roads" and "public highways" interchangeably and as synonymous; and this use of the terms is found throughout the whole body of our highway laws. So, too, the terms have been used by this court interchangeably, and we perceive, upon examination of both statutes and decisions, that their precise meaning is to be gathered from the context in each particular case.

"An examination of the authorities will show that the term street, avenue, road, public road, county road, etc., is used loosely and indiscriminately in legislation and judicial decisions relating to public highways, and little reliance can be placed on the particular term used to describe any given way. Undoubtedly the term street or avenue commonly applies to a public highway in a village, town or city, and the term road to suburban highways. But there may be roads in a city or town and streets and avenues in the country. Our own legislation affords abundant evidence of this looseness of expression." *Murphy v. King County*, 45 Wash. 587, 88 Pac. 1115.

Appellant directs its criticism largely to the title of chapter 41, where the term "public road" is used, but if we were to accept appellant's view as to the limiting character of this title, appellant would not be aided, because amending chapter 168 uses the more inclusive word "highway."

But, independently of the terms used in the titles of the acts to designate the classes of public ways intended to be covered, we think the title of chapter 41 is sufficient for another reason. The title of that act is, in part, as follows:

"An Act relating to public roads in the State of Washington; abolishing the General Road and Bridge Fund, the Permanent Highway Fund and the County Permanent Highway Maintenance Fund, and provid-

ing for the use of a portion of the receipts in the Motor Vehicle Fund in lieu thereof;" etc.

Now, the counties had theretofore been authorized to levy an annual tax for the general road and bridge fund, to be used for the construction, maintenance and repair of county roads, bridges and wharves, and there was a proviso that the county treasurer should remit to the city or town treasurer of each city or town within the county fifteen per cent of all moneys collected for such fund in such city or town; the money so remitted to be expended by the corporate authorities on roads and bridges within the city or town connecting with main county roads. Certainly, the inclusion in the title of a reference to the abolition of this fund and the substitution of other financial aid in lieu thereof was sufficiently challenging.

■ The appellant urges, as proving the insufficiency of the title, that it budgeted for its own use the whole of the sum to be remitted by the state treasurer. This argument is a *non sequitur*. The titles of the acts do not disclose the amount of money to be remitted to the counties. This can only be discovered by a reading of § 5, and, of course, the provisions of that section, in conveying to appellant information as to the sum to be remitted, also set out as plainly as language could express it the duty to share the remittance with the cities.

■ It is contended that the challenged provisions are void because so indefinite and uncertain as to be unenforcible. We are unable to see any merit in this contention. Whatever may be said as to the uncertain and somewhat indefinite character of 'our highway legislation as a whole, there can be no uncertainty as to the meaning and purpose of the provisions here involved. Their purpose is proclaimed in the plainest language.

But it is said that the standard fixed for determining the apportionment to the cities is indefinite and uncertain, in that it does not make plain what valuation is referred to. The expression here used is found in many of our statutes dealing with other subjects, and is always used to designate the equalized value of property in cities or counties as finally determined by the board of equalization. The state valuation referred to by appellant is not a valuation for all purposes, but rather a method of equalizing among the counties the burden of state taxation.

Appellant claims the provisions are indefinite as to the time when remittance is to be made by the county to the city. In receiving remittances out of the lateral highway fund from the state treasurer, the county is a trustee for the city in respect of its share of the remittances, and this share is payable to the city upon its receipt by the county.

It is also urged that the challenged provisions are void because conferring upon cities of the first, second and third classes privileges denied to fourth class cities and towns. The appellant makes reference to no particular constitutional provision violated. If it has in mind § 12, article I, of the state constitution, to the effect that no law shall be passed granting to any citizen, class of citizens or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations, the objection is, of course, untenable, since this constitutional provision by its terms does not relate to muncipal corporations. The legislature is authorized by the constitution to classify cities and towns, and is not required to endow all classes with the same powers and functions or impose upon all equally the same limitations.

The grant of financial aid to cities of the first, second and third classes here involved is not made to them in aid of any of their general corporate or proprietary purposes, but in trust for the construction and maintenance of public highways whose ultimate control rests in the state. The state itself could establish and improve the streets within the cities without challenge of its legal right to do so. It has chosen rather to act through municipal agencies of its own creation.

Neither do we think the fact that the legislature has chosen to remit these moneys to the cities through the agency of the counties makes the law vulnerable. Under the provisions of chapter 88 of the 1929 session, p. 159, the cities' share was to be remitted directly by the state treasurer. This plan was changed by the amending acts, and the county was used as the agency of transmittal. The counties, of course, as agencies of the state, may have this ministerial duty imposed upon them by the legislature.

After a careful consideration of the authorities cited by appellant, we do not find in them any support for its contention. The trial court, in a learned and exhaustive opinion, fully and clearly covered the issues in the case, and its decision is here affirmed.

BEALS, C. J., BLAKE, HOLCOMB, and TOLMAN, JJ., concur.