[No. 30889. Department One. July 28, 1949.]

HARRY LOPEMAN et al., *Respondents*, v. HOLGER HANSEN et al., *Appellants*.[1]

[1] Reported in 208 P. (2d) 130.

292

*Washington & Wickwire*, for appellants.

*Moe & Huse*, for respondents.

MALLERY, J.—Plaintiffs brought this action to enjoin defendants from using a strip of plaintiff's land. Defendants cross-complained to enjoin plaintiffs from obstructing it on the ground that it is a public road. Defendants appeal from a decree in plaintiffs' favor.

All the land described is in township twenty-two north, range twenty-eight east, Willamette meridian. Respondents own all of section twenty-five, which lies immediately east of section twenty-six. Appellants own the south half of section twenty-six and respondents own the northeast quarter of it.

The disputed area is a sixty-foot strip a mile long lying thirty feet on either side of the common boundary between sections twenty-five and twenty-six.

Prior to 1904, Webley road crossed the south half of section twenty-six and the north half of section twenty-five diagonally from southwest to northeast. When, in 1904, the then owner of the northeast quarter of section twenty-six, following the local custom, built a fence thirty feet inside his north and east boundaries, he did not obstruct Webley road because that road touched the northeast quarter only at its southeast corner.

In 1905, the then owner of the southeast quarter of section twenty-six likewise located a fence thirty feet inside his

east boundary. He constructed gates to permit continued use of Webley road.

In 1908, the tenant occupying section twenty-five located a fence thirty feet inside his section lines.

Thus, in 1908, there was formed a sixty-foot lane between sections twenty-five and twenty-six. Webley road users, diverted by the fence on section twenty-five, thereafter followed this lane north to the county road along the north section line. The lane ran from the north-south road between sections twenty-three and twenty-four, immediately to the north, and the open stock range south of sections twenty-five and twenty-six.

Commencing sometime between 1908 and 1915, the lane was obstructed by a gate at the south end, where it entered the open range and, in 1916, respondents constructed two gates across the north end and one at the half-section line.

The lane is shown on county and other maps as being a secondary road or trail, but the county road records indicate that it has not been established officially as a county road by any proceedings of the county commissioners.

A ravine draining a large area crosses the lane, periodically causing minor wash-outs. From time to time during the 1917-28 period, fences and gates were down and covered with sand and weeds, but the lane was refenced at various times. From 1928, until 1942 this area was not cultivated and the fences and gates rotted and disappeared.

Appellants bought the south half of section twenty-six and fenced it in 1942, the same year respondents reconstructed their fences and gates and plowed all of the northeast quarter of section twenty-six, including the thirty-foot strip in the disputed area.

Appellants contend that public use of the strip was adverse for the statutory period of ten years and that therefore it did not require a dedication to secure public rights in the lane.

As to the public's uninterrupted use of the lane for the statutory period, we observe that the entire time in question extends from 1904 to 1948. It should be considered in three periods, *viz.*, 1904-28, 1928-42 and 1942-48.

Some slight use of the lane by the county and by the public occurred during the 1904-28 period.

During the 1928-42 period this entire area was uncultivated and the fences and gates were permitted to disappear. Evidence of public use of the lane, which was entirely undefined and partially obliterated by wash-outs and sand dunes during this period, is so inconclusive that we hold that no prescriptive rights were acquired therein during this period. *State ex rel. Shorett v. Blue Ridge Club*, 22 Wn. (2d) 487, 156 P. (2d) 667.

The 1942-48 period is too short to permit acquisition of prescriptive rights by the public.

During the 1904-28 period the lane was more or less continuously obstructed by one gate commencing possibly as early as 1908 and by as many as four gates after 1916. The evidence is not clear as to how many years these gates stood after 1916. The lane was not fenced on both sides until 1908. Even if the first gate was erected as late as 1915 it interrupted ten years of public user of the lane.

The party asserting the serviency of another's estate to his use bears the burden of producing evidence with the greater convincing power. See *N. W. Cities Gas Co. v. Western Fuel Co.*, 13 Wn. (2d) 75, 123 P. (2d) 771, where the authorities and precedents are collected; *State ex rel. Shorett v. Blue Ridge Club, supra*; *Roediger v. Cullen*, 26 Wn. (2d) 690, 706, 175 P. (2d) 669.

We agree with the trial court that appellants have not shown uninterrupted use for any particular statutory period necessary to establish any rights by prescription.

Appellants' major contention is that the trial court erred in finding no dedication as a public road. This contention is in two parts: (1) that applying to the east thirty feet of the northeast quarter of section twenty-six where the first fence was erected, and (2) that applying to the west thirty feet of section twenty-five which was fenced by tenants.

The elements of an implied common law dedication are set forth in detail in 4 McQuillan on Municipal Corporations (Rev. ed. 1942), ch. 33; 4 Tiffany on Real Property (2d ed. 1939), ch. 24; 2 Thompson on Real Property (Rev.

ed.), §§ 841-87; 1 Elliott on Roads and Streets (4th ed. 1926), ch. 5; 16 Am. Jur. 360 *et seq.*, Dedication §§ 16-42; C. J. S. 60 *et seq.*, Dedication §§ 10-15. Our cases are harmonious with the weight of authority in holding that the essence of these many elements is (1) an unequivocal act (2) by the fee owner, (3) implying his *animus dedicandi* followed by (4) acts by the public or its agents which so appropriately complement the offer of dedication as to imply public acceptance. *Roundtree v. Hutchinson*, 57 Wash. 414, 107 Pac. 345, 27 L. R. A. (N.S.) 875; *Stevens County v. Burrus*, 180 Wash, 420, 424, 40 P. (2d) 125; *Forrester v. Fisher*, 16 Wn. (2d) 325, 133 P. (2d) 516, and the cases cited therein.

An implied common-law dedication of private property to public use is never lightly inferred, and all of its elements must be proved by the party asserting it. To be sufficient, the evidence implying *animus dedicandi* must be unmistakable. *Stevens County v. Burrus, supra.* The trial court found that the only evidence of *animus dedicandi* is the bare existence and location of the fences thirty feet within the section boundaries.

While it is the actual intention of the owners to dedicate to the public with which we are here concerned, because of the lapse of time, only secondary and circumstantial evidence is now available.

The appellants contend that the erection of fences thirty feet back from the section lines on both sides, according to the custom of the country, shows an intention by necessary inference to dedicate the lane thus formed as a public road. It may be conceded that this, confirmed by public user, would support an inference of dedication in the absence of contrary evidence. We think there are facts and circumstances here presented which rebut the *necessity* of such an inference. The circumstances surrounding the fencing of section twenty-five by the tenants is material as such.

A tenant has no power to dedicate his landlord's property to public use. 16 Am. Jur. 354, Dedication § 11. While the lease in question required the tenants to fence the section, it contained no specific directions as to how it should

be done. It does not appear that the owner ever saw the fences after they were erected. Hence their existence for a long time does not support an inference of ratification. The intention of the tenant is immaterial. We do not agree with appellants' contention that an agency should be inferred which would make the fencing an act of dedication binding on the landlord.

Additional material rebuttal evidence is found in the presence of gates across the lane for substantial parts of the period here involved. The pleadings in the instant action illustrate the point. Appellants have prayed that the present gates be removed. If the lane were a public road they would have a right to this relief, since no one would have a right to maintain an obstruction therein. The closing of what appears to be a road by gates bears a strong inference that the one who does so claims some right in the land, and it goes far to negative the inference of an intention unequivocally to dedicate the land as a public road. To this appellants reply that the gates were intended only to control stock for the convenience of the owner while still recognizing the lane as a public road. We think the sounder inference is that the owner erected the gates as a matter of right.

In drawing inferences from the local custom of fencing thirty feet inside all section lines, other factors must be considered. It is true that in this community roads follow section lines, yet not all section lines are dedicated as roads. When one builds a fence thirty feet inside his section line as was done in section twenty-six, prior to a similar act delineating a traffic channel by his neighbor abutting the common section line, sound reason does not infer a dedication so much as it infers a desire to avoid expense and inconvenience in the event that a road should be located there in the future. In other words, the act more clearly shows a conditional willingness to dedicate rather than present unequivocal dedication.

The lane in question leads only to open stock range. No one except appellants live along the lane. Even they use the county road abutting their own property on the west

for general road purposes and plan to use the lane only as a convenience in moving from one part of their land to another. This is not characteristic of a public road. See *Attorney General v. Antrobus* (1905) 2 Ch. 188, 4 B. R. C. 868.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and HILL, JJ., concur.