[No. 36181.    Department Two.    January 10, 1963.]

GARY KARB, *Respondent*, v. THE CITY OF BELLINGHAM *et al.,*
*Appellants.**

*Reported in 377 P. (2d) 984.

*Charles R. Olson* and *Joseph T. Pemberton*, for appellant City of Bellingham.

*Hullin, Ehrlichman, Carroll & Roberts*, for appellant York-Ellis Mill Company.

*Vance & Goodin*, for respondent.

OTT, J.—The City of Bellingham is the owner of a level plot of ground bounded by public streets. In 1946, the city's housing authority, in conjunction with the Federal Housing Authority, constructed rental units on part of the area. In order for the tenants to have access to their units, the housing authority constructed a U-shaped driveway leading from Carolina Street, on the north side of the property, to the units (approximately 100 feet) and returning to Carolina Street. The driveway entrance and exit were near the center of the block. The driveway was never platted or dedicated as a street, accepted as such by the city or designated by name.

Several years prior to the time here in question, the housing project was abandoned and the units removed. The U-shaped hard-surfaced driveway was left upon the property, but was not thereafter maintained or used by either of the housing authorities. The City of Bellingham occasionally leased the area as a circus ground and to the York-Ellis Mill Company for the purpose of storing lumber. During the years between the abandonment of the housing project and the leasing of the premises to the mill company for the storage of lumber, an occasional automobile would

be seen parked on the U-shaped area or driving around the loop.

September 20, 1959, at approximately one o'clock p.m., during the time the area was leased to the York-Ellis Mill Company, Gary Karb, aged 13, was riding his bicycle on the hard-surfaced U-shaped area, between the stacks of lumber. He struck a piece of lumber which extended from one stack to another, and was injured. This action was instituted by his guardian ad litem against the City of Bellingham and the York-Ellis Mill Company to recover damages for the minor's injuries.

The plaintiff first predicated his claim on the theory of attractive nuisance. He later abandoned this theory and prosecuted the action solely upon the ground that the U-shaped driveway was a public street, and that the city had unlawfully authorized the York-Ellis Mill Company to maintain a public nuisance thereon.

The defendants denied that, at the time of the accident, the U-shaped area was a public street, and, at the close of plaintiff's evidence and again at the close of all the evidence, moved that plaintiff's claim be dismissed. The motions were denied.

The cause was submitted to the jury to determine, *inter alia*, whether the U-shaped area was a public street. From a verdict in favor of the plaintiff, the defendants have appealed.

The appellants contend that the undisputed facts established that the U-shaped area was not a public street, and assign error to the court's refusal to determine the issue, as a matter of law.

The respondent admitted in his brief and in oral argument before this court that, unless the U-shaped driveway was a public street at the time of the accident, his claim must fail.

■ A public street is commonly created by one of four methods: (1) grant, (2) condemnation, (3) dedication, and (4) prescription or user. 10 McQuillin, Municipal Corporations (3d ed.) § 30.21, p. 557.

There is no evidence of a grant or dedication of the U-

shaped area as a public street, or of an acceptance of it, as such, by the City of Bellingham. It was not created as a public street by the City of Bellingham through the exercise of its statutory authority (RCW 35.22.280(7)) or by condemnation. There is no claim that the public obtained a prescriptive right to use the U-shaped area as a public street. The area was not shown to have been created as a public street by means of any of the commonly known methods.

Respondent contends that the U-shaped driveway was used as a thoroughfare during the existence of the housing project; that the public was thereby led to believe it was a public street; that, as a consequence, the appellants are estopped to assert that it was not a public street at the time of the accident, and that, in any event, the facts with reference thereto were for the jury to determine.

The term "street" commonly applies to a public highway in a city or town. *Murphy v. King Cy.*, 45 Wash. 587, 591, 88 Pac. 1115 (1907); *Spokane v. Spokane Cy.*, 179 Wash. 130, 134, 36 P. (2d) 311 (1934). A highway is a way open to the public at large, *for travel or transportation. State ex rel. Oregon-Washington R. & Nav. Co. v. Walla Walla Cy.*, 5 Wn. (2d) 95, 100, 104 P. (2d) 764 (1940); 25 Am. Jur., Highways § 2, p. 339.

In *Spencer v. Arlington*, 49 Wash. 121, 94 Pac. 904 (1908), the municipality never formally established the area in question as a public street. However, by making repairs and improvements thereon, and allowing the public to travel upon the area for a period of 12 to 15 years prior to the time of the accident, the municipality was held estopped to deny that it was, in fact, a public street. The court further held that, where the evidence of public user was conflicting, the question of whether a municipality was estopped to deny that it had created a public street by an implied dedication was properly one for the jury.

In *Basil v. Pope*, 165 Wash. 212, 5 P. (2d) 329 (1931), the evidence established that the area there in question did appear upon the city plat as "Fourth street," but that, at most, it was used merely as a place to accommodate an

occasional itinerant circus and to park automobiles. The trial court, in that case, instructed the jury that, as a matter of law, "Fourth street" was not a public street. In affirming the trial court's determination, we said:

"It seems clear that 'Fourth street,' *at the time of this accident, was not a street in the eyes of the law.* It was a street on paper only. It was never improved nor used as a street. Traffic never moved north and south on 'Fourth street' across Duryea street, nor entered Duryea street on 'Fourth street' from either the south or the north. In short, *the evidence wholly fails to establish that 'Fourth street' was ever used by the public as a road or way for travel or transportation.* This being so, it is clear that the place where the accident occurred was not within a street intersection." (Italics ours.)

See, also, *Santoro v. Brooks,* 121 Ore. 424, 254 Pac. 1019 (1927).

In the instant case, the U-shaped area was "not a street in the eyes of the law," in that it was not established as such by any of the statutory methods. The U-shaped area, therefore, could be a public street only through application of the doctrine of an implied common law dedication, which is based on estoppel in pais.

In *Roundtree v. Hutchinson,* 57 Wash. 414, 107 Pac. 345 (1910), we said:

"  .   .   . The distinction between a statutory dedication and a common law dedication is that the former proceeds from a grant, whilst the latter operates by way of an estoppel *in pais.* There is no particular form or ceremony necessary in the dedication of land to a public use. An implied common law dedication arises from some act or course of conduct from which the law will imply an intention on the part of the owner of the property to dedicate it to the public use."

See, also, *Lopeman v. Hansen,* 34 Wn. (2d) 291, 208 P. (2d) 130 (1949).

The elements of an implied common law dedication are (1) an unequivocal act by the fee owner establishing his intention to dedicate, and (2) reliance on the act by the public, indicating a public acceptance thereof. *Lopeman v. Hansen, supra,* and cases cited. One who asserts the

public has acquired a right to use an area as a public street, because of an implied common law dedication by the fee owner, has the burden of establishing these essential elements. *Lopeman v. Hansen, supra.*

██ In the instant case, the record discloses, as to element (1), that, when dominion over the area was abandoned by the housing authority and returned to the city, there was no act on the part of the city (the fee owner), prior to the accident, which indicated an intention to recognize the driveway as a public street. Rather, the city's unrestricted leasing of the property in question as a circus ground and for the purpose of storing lumber evidenced a contrary intent.

Relative to element (2), the U-shaped driveway did not lead anywhere, except to return to the same street from which it originated. At the time it was constructed by the housing authority, it did not come within the purview of this court's definition of a public street, in that it was not "a way open to the public at large." From the time the housing project was abandoned and the units removed until the time of the accident, the U-shaped driveway was not shown to have been used as a public way for travel or transportation. There was no evidence that the public regarded it as a public street. At the time of the accident, lumber had been piled on and adjacent to the driveway, with various pieces of lumber protruding from the piles and plainly obstructing the free use of the U-shaped area as a way for travel. Under these circumstances, one riding between the stacks of lumber could not have been misled into believing that the driveway was a public street.

The record before us does not establish any of the required elements of an implied common law dedication.

In *Spencer v. Arlington, supra,* the implied dedication was predicated upon the continuous use of the area in question by the public for a period of 12 to 15 years, during which time the city made repairs and maintained it as a roadway. The cause was submitted to the jury because of a conflict in the evidence relating to its use by the public and maintenance by the city.

In the instant case, there was no factual dispute regarding the abandonment of the housing project several years prior to the accident and that the driveway thereafter served no useful purpose for public travel and transportation, except as a means of ingress and egress to a vacant lot. There was no factual issue for jury determination. *Basil v. Pope, supra.* The admitted facts did not establish, as a matter of law, that the U-shaped area, at the time of the accident, was a public street. *Roundtree v. Hutchinson, supra.*

We conclude that the court erred in denying the appellants' motion to dismiss at the close of the evidence.

The judgment is reversed, and the cause remanded with instructions to enter judgment of dismissal.

DONWORTH and HAMILTON, JJ., concur.

FINLEY, C. J., concurs in the result.

HUNTER, J. (dissenting)—The majority opinion holds, as a matter of law, that there is insufficient evidence to submit to the jury the factual issue of whether the roadway in question, as a result of the conduct of the City of Bellingham, had become a city street by common law dedication. I disagree. In *Spencer v. Arlington*, 49 Wash. 121, 94 Pac. 904 (1908), cited in the majority opinion, we said:

" . . . It was for the jury to determine whether the place was within a public street. A dedication and acceptance may be implied from a general and long-continued use by the public as of right. Elliott, Roads and Streets (2d ed.), § 154; 2 Dillon, Mun. Corp. (4th ed.), §§ 638, 642; *Raymond v. Wichita*, 70 Kan. 523, 79 Pac. 323. Making repairs and improvements and inviting the public to travel may be considered as evidence of the adoption of a highway by a municipality, and it may be thereby estopped to deny that the way is a public one and under its control. 5 Thompson, Commentaries on the Law of Negligence, § 5941. . . ."

The record discloses the following evidence, which the jury was entitled to believe in support of a common law dedication or estoppel of the city, that the roadway was a city street:

In 1946 the City of Bellingham constructed a city housing project adjacent to Carolina Street and within the city limits. A U-shaped roadway was constructed through the area for the use of the residents of the units and by anyone having business with the residents or cause to traverse said roadway. It was open for the general use of the public as was any residential street in the City of Bellingham. It looked like other residential streets. It had the same surface as other streets in the vicinity, was the same width, and was maintained by the city street department. It was traversed by the public. The roadway was never closed by any notice or physical barrier.

Under this evidence the trial court correctly submitted the issue of whether the roadway, constructed and maintained within the housing development, was a city street. The jury by its verdict answered the question in the affirmative.

The other assignments of error raise questions which are not supported by law or factual questions which were properly submitted and resolved by the jury.

The judgment of the trial court entered upon the jury verdict should be affirmed.

---

March 4, 1963. Petition for rehearing denied.