# Richmond

## CITY OF LYNCHBURG, ETC. V. COMMONWEALTH, EX REL., C. & O. RY. COMPANY AND APPALACHIAN ELECTRIC POWER COMPANY.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*T. G. Hobbs, Wilson, Kemp & Hobbs,* and *Caskie & Frost,* for the appellant.

*Abram P. Staples, Attorney-General, Barksdale & Abbot, David H. Leake,* and *Hunton, Williams, Anderson, Gay & Moore,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The James River Company was incorporated by an act of the General Assembly passed in October, 1784. The charter recited that "the clearing and extending the navigation of James river, from tidewater upwards to the highest parts practicable on the main branch thereof, would be a work of great public utility." The company was empowered under the charter to condemn lands, cut canals, erect locks, sell stock, etc. Pursuant to its authorization, the company began the construction of a canal, which work continued for a period of years.

In 1832 the General Assembly passed an act incorporating the James River and Kanawha Company. This company, through purchase and otherwise, succeeded to all the rights of the James River Company, and under its charter "was charged with the duty of connecting the tidewater of James river with the navigable waters of the Ohio."

In its endeavor to comply with its charter obligations, the James River and Kanawha Company had, in the year 1840, completed a canal from the tidewater to what is now the city of Lynchburg. Prior to the completion of the canal the city of Lynchburg had erected a dam across James river to provide the inhabitants thereof with a suitable water supply. In the year 1835 the city, by proper deed, conveyed this dam to the James River and Kanawha Company. The

canal was not financially successful, and passed through several financial crises, until in 1879 the General Assembly authorized an abandonment of the undertaking and a sale of its property to the Richmond and Alleghany Railroad Company, another Virginia corporation incorporated by several special acts of the General Assembly. The sale was consummated by deed in 1880. Shortly thereafter, the Richmond and Alleghany Railroad Company was placed in receivership, and in the year 1890 all of said properties were conveyed to the Chesapeake and Ohio Railway Company, pursuant to an act of the General Assembly of Virginia. The said Lynchburg dam and the section of the canal about two miles in length, and known as the Lynchburg Level, involved in this proceeding, are still owned by the Chesapeake and Ohio Railway Company.

The Lynchburg dam was, pursuant to act of the General Assembly of Virginia, reconstructed in 1881-82. Before beginning the work of reconstruction, the Richmond and Alleghany Railroad Company entered into a contract with the city of Lynchburg, determining the rights of the respective parties in and to the flow of water in the James river at the dam.

The Chesapeake and Ohio Railway Company has entered into an agreement with the Appalachian Electric Power Company, under date of December 22, 1932, to sell to the electric company the Lynchburg dam and certain associate properties, provided that there can first be obtained legal authority to abandon and terminate the public use impressed upon said properties in connection with the canal.

There is no claim by appellants that the Lynchburg level of the canal has been used for purposes of navigation or water-borne traffic for many years past, nor that there is any prospect of such use in the future. The only use now being made of the canal is to furnish water to a small number of lessees from the railway company, and to provide an outlet for certain sewers of the city of Lynchburg which empty into the canal.

In June, 1933, appellees, to effectuate the proposed sale,

filed a joint petition before the State Corporation Commission, asking for authority to terminate all public duties imposed upon them in relation to the said properties. This application was opposed by the city of Lynchburg, on the ground that: "The Commission has no power or authority to cancel or annul the perpetual contract under the terms of which the canal property is held by the Chesapeake and Ohio Railway Company." Similar opposition was urged by the other appellants.

The Commission, after a protracted hearing, was of opinion that appellees were entitled to the relief prayed for, and on November 28, 1933, entered the following order:

"Ordered, adjudged and decreed, that all public duties or obligations created, maintained, preserved or imposed in connection with or upon the so-called waterworks dam and/or Lynchburg dam across the James river at Lynchburg and the so-called Lynchburg level of the former James river and Kanawha canal between the said dams and the first lock below Lynchburg, together with all connected or associated lands, locks, races, canals and other properties, or imposed upon owners of the said properties, by the act of February 27, 1879, or otherwise, have been sufficiently complied with and are now and hereby altogether and absolutely discharged; and further

"Ordered, adjudged and decreed, that the Chesapeake and Ohio Railway Company and/or Appalachian Electric Power Company may, so far as any public duties are concerned, discontinue and abandon the said dams and the said Lynchburg level of the canal, discontinue the flow of water from the said dams into the said Lynchburg level of the canal, discontinue the present water supply of the said Lynchburg level, discontinue the said Lynchburg level as a canal or a source of water power, abandon its use as a public way, terminate and abandon all public uses, duties and obligations attached or relating to the said properties, and use and dispose of the said properties as if no such public use, duty or obligation had ever attached or related to them.

"Provided, however, that nothing in this order contained

shall disturb or affect any rights which the city of Lynchburg may have to one-fifth of the flow of the James river at the said dams, or any rights which Jno. H. Heald Company, Lynchburg Milling Company, Piedmont Mills, Incorporated, Lynchburg Diamond Ice Factory, or any other person, firm or corporation, may have to water or water power from the said Lynchburg level under their respective leases, or otherwise, from the Chesapeake and Ohio Railway Company or its predecessors in title, or any rights, if any, which the city of Lynchburg may have in, to or over the said properties for the purpose of its existing sewer system."

On December 13, 1933, appellants filed their petition, seeking a modification of the above order, so that the same would read as follows:

"But it is adjudged, ordered and decreed that nothing in this order contained shall disturb or affect any rights which the city of Lynchburg may have to one-fifth of the flow of the James river at the said dams or any rights, if any, which the city of Lynchburg may have in, to or over the said properties for the purpose of the existing sewer systems; that the Commission has no authority to interpret the rights of the city of Lynchburg, John H. Heald Company, Lynchburg Milling Company, Piedmont Mills, Incorporated, G. Bruning Tobacco Extract Company, Incorporated, or Lynchburg Diamond Ice Factory, under the act of February 27, 1879, or otherwise, to have the Lynchburg level of the canal kept open as a source of water or water power, or to enter any order granting authority to the Chesapeake and Ohio Railway Company to cut the water supply off from said canal so far as it affects the above-named parties; that it has no authority or jurisdiction to determine whether or not the provision of the act of February 27, 1879, requires said canal to be kept open perpetually for the benefit of the said parties above-named, and nothing in this order shall be construed as giving permission to the Chesapeake and Ohio Railway Company or the Appalachian Electric Company to cut the water off from

said Lynchburg level of the canal so as to affect the private rights of the said parties above-named."

The basis of appellants' contention seems to be that the order entered did not with definite clarity safeguard the private rights asserted by appellants.

The Commission refused to grant the prayer for a modification of the order, and embodied their reasons for the refusal in this letter directed to counsel for appellants:

"We have carefully considered the petition sent by you on December 13, 1933, in behalf of the city of Lynchburg, John H. Heald Company, and other parties, who appeared in the application of the Chesapeake and Ohio Railway Company and the Appalachian Electric and Power Company, for permission to close the Lynchburg level of the James river and the Kanawha canal, in which petition a modification is asked of the order entered by the Commission on November 28, 1933.

"We are of the opinion that nothing would be gained by allowing a hearing thereon, as requested in the petition. The order entered by the Commission has substantially the same effect as the order you suggest would have, if entered by the Commission, and no others were sought to be dealt with in the order entered on November 28th. We do not think that the order is uncertain in its terms, or that it is necessary to enter a supplemental or modified order, clarifying and interpreting it. The Commission did not undertake to pass upon the rights, if any, of the city of Lynchburg, and the other petitioners, in any respect regarding the Lynchburg level of the canal, but only dealt with the question as it affects the public. The rights, if any, of the city of Lynchburg and the other petitioners as respects the whole matter, are left just as if our order had not been entered.

"For the reasons stated above, your request for a rehearing of the matter, and for the entry of a modified or interpretative order, is declined."

The action of the Commission in entering the order of November 28, 1933, forms the basis of this appeal.

As we comprehend the brief of appellants, and as was virtually admitted in the oral argument, no question of the jurisdiction of the Commission to act in the premises is involved in this appeal. Such a contention would be untenable if made, as is conclusively demonstrated in the opinion of the Commission filed with the record.

As we view the case, the only pertinent assignment of error is the refusal of the Commission to modify the order of November 28, 1933.

While the apparent aim of the appellants is to have the order modified, we are constrained to conclude that, motivated by an undue apprehension as to the effect upon their rights, the ultimate aim of appellants is to have this court construe the order, and thus in effect adjudicate the respective private rights of the parties. This conclusion is predicated upon language contained in appellants' brief. Appellants quote from a brief filed by appellees before the Commission, opposing a modification of the order, as follows: "This language does not leave any room for doubt. It expresses in apt and decisive terms the intention of the Commission to terminate all public duties and to leave unaffected in any way the purely private rights,"—and then make this significant statement:

"With this construction and interpretation of the order of the Commission, appellants would have no objection to the affirmance of the order, but we would ask that the decree of this court specifically adopt and accept this construction, so that there would be no possible doubt in regard to the effect of an order, which as shown in the petition for appeal had apparently been otherwise construed by the manager for the Appalachian Electric Power Company."

We are in thorough accord with the view of the Commission on this question, as expressed in the able opinion of Mr. Commissioner Ozlin, and we adopt it as the conclusion of this court. There it is said: "We shall have very little to say in this opinion regarding any private rights of the lessees of water power, or otherwise. Nothing is better settled than that this Commission does not have jurisdiction

to adjudicate and determine private rights or private contracts between public service corporations and individuals. Authorities are abundant, but a few will suffice. See *Newport News Light & Water Co.* v. *Peninsular Pure Water Co.* (1908), 107 Va. 695, 59 S. E. 1099; *N. & W. Ry. Co.* v. *Commonwealth* (1925), 143 Va. 106, 129 S. E. 324. Also, see *Portsmouth* v. *Va. Ry. & Power Co.* (1925), 141 Va. 54, 126 S. E. 362, 39 A. L. R. 1510; *Hampton* v. *Newport News & Hampton Ry., etc., Co.* (1926), 144 Va. 24, 131 S. E. 330. * * *

"The Commission has not in this case undertaken to deal with any private rights of any parties who have or may have any interest in the Lynchburg dam or the Lynchburg level of the canal. All such rights are expressly preserved in the order entered by the Commission, wherein it is stated: 'Provided, however, that nothing in this order contained shall disturb or affect any rights which the city of Lynchburg may have to one-fifth of the flow of the James river at the said dams, or any rights which John H. Heald Company, Lynchburg Milling Company, Piedmont Mills, Incorporated, G. Bruning Tobacco Extract Company, Incorporated, or Lynchburg Diamond Ice Factory, or any other person, firm, or corporation, may have to water or water power from the said Lynchburg level under the respective leases, or otherwise, from the Chesapeake and Ohio Railway Company, or its predecessors in title, or any rights, if any, which the city of Lynchburg may have in, to, or over the said properties for the purposes of its existing sewer system.'

"Surely, every right of the intervenors, or of any other person, firm or corporation, is amply protected under the foregoing language. The Commission fully realizes that it has no jurisdiction or authority to interfere in any respect with any such rights."

The above language needs no construction. There is no error in the order of the Commission, and it is therefore affirmed.

*Affirmed.*