# Richmond

## John H. Heald Company, et als. v. Chesapeake and Ohio Railway Company.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Caskie & Frost* and *Kemp, Hobbs, Daniel & Davidson,* for the appellants.

*S. H. Williams, David H. Leake, George D. Gibson, Barksdale & Abbot* and *Hunton, Williams, Anderson, Gay & Moore,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In 1840 the James River and Kanawha Company, pursuant to authority previously granted to it by the General Assembly of Virginia, completed its canal along James River from Richmond to Lynchburg as a means of public transportation.

But the development of the railroad as a superior method of transportation and the severe flood damage suffered by the canal and its locks in 1877 practically put an end to the undertaking. Consequently, by an act approved February 27, 1879 (Acts of 1878-79, ch. 139, p. 118), the General Assembly authorized the sale of all of the properties, rights, franchises, etc., of the canal company to the Richmond and Alleghany Railroad Company, which had been chartered shortly previous thereto for the purpose of constructing a railroad along the line of the canal from Richmond to Lynchburg and beyond.

The transfer of the properties from the canal company to the railroad company was consummated by a deed dated March 4, 1880. As a part of the consideration for said conveyance, the railroad company agreed to perform all of the terms and conditions imposed upon it by the act of February 27, 1879, including the following language which is pertinent to the present litigation:

"Sixth. It is hereby provided that the rate of dockage at Richmond shall not exceed the rate at present established by the James River and Kanawha Company, and all existing contracts for water privileges along the entire line shall be respected and maintained at rates not exceeding the present rates, except in those cases in which they shall be cancelled or altered by agreement or extinguished by condemnation. It shall be the duty of the Richmond and Alleghany Railroad Company to maintain the present water supply of the docks and of the canal along its line between Bosher's dam and tidewater, and along the Lynchburg level between the Waterworks dam (which shall be preserved) above Lynchburg and the first lock below Lynchburg, and in the construction of its railroad it shall not so destroy or obstruct the present canal between Bosher's dam and tidewater or between the waterworks dam above Lynchburg and the first lock below Lynchburg, as to lessen the present water supply."

In 1881, or 1882, pursuant to a special act of the General Assembly (Acts of 1881-82, ch. 257, p. 267), the Richmond and Alleghany Railroad Company reconstructed and extended across the river the dam which had been built by the city of Lynchburg about 1830. This dam furnishes the water supply for the canal which is the subject of the present litigation.

By mesne conveyances the Chesapeake and Ohio Railway Company (hereinafter called the Railway Company) has succeeded to all of the properties and obligations of the Richmond and Alleghany Railroad Company.

Since the acquisition of the properties of the canal company, the Railway Company has continued the maintenance of the Lynchburg level of the canal. It has likewise continued the business originated by the James River and Kanawha Company

prior to the War between the States, and carried on by each of the successive owners of the canal, of furnishing water and water power to various industries (including the appellants) located on or near the canal. This has been done under written leases which have been renewed from time to time.

In 1932 the Railway Company entered into a written agreement with the Appalachian Electric Power Company to sell to the latter the dam and certain connecting properties at Lynchburg upon the condition that there should first be obtained legal authority to terminate all public duties impressed thereupon.

Pursuant to this agreement the Railway Company and the Appalachian Electric Power Company filed a joint petition before the State Corporation Commission of Virginia, on June 19, 1933, seeking authority to terminate and abandon all of their public duties imposed upon or relating to such properties. In this proceeding each of the appellants intervened and opposed the granting of the relief therein sought.

After a lengthy hearing the State Corporation Commission granted the prayer of the petitioners and terminated and discharged all of their public duties and obligations of every kind connected with the properties in question, but specifically provided in its order that nothing therein should disturb or affect any rights which any of the appellants here might have to water or water power from the properties in question "under their respective leases or otherwise."

The above order of the Commission was affirmed by this court on March 14, 1935. *City of Lynchburg* v. *Commonwealth, ex rel.*, 164 Va. 57, 178 S. E. 769.

Some months later the Railway Company, in conformity with the terms of its leases with the respective appellants, served notices on them of its intention to terminate such leases and to discontinue the water supply.

Thereupon the appellants filed in the court below their bill of complaint setting out the above facts, claiming that each of them had under the act of February 27, 1879, a vested private right to a continued supply of water from the canal independent of such leases, and praying for an injunction

restraining and enjoining the Railway Company from closing the canal and discontinuing such water supply.

From a decree sustaining a demurrer to and dismissing the bill, this appeal has been allowed.

Appellants concede that no question of public duty is here involved. This they do since all public duties relating to said properties have been absolutely and finally terminated in the manner prescribed by law.

The Railway Company, on its part, concedes that it has no right to terminate the lease of the Piedmont Mills, Inc., with respect to its corn mill. Accordingly that lease and property are not here involved.

The substance of appellants' claim is that, aside from their respective leases with the Railway Company, the "sixth" clause of section 1 of the act of February 27, 1879, above quoted, gives to each appellant the private right to require the appellee company to perpetually maintain, for the benefit of such appellant, the Lynchburg level of the canal and to furnish therefrom to such appellant, at reasonable rates, an undiminished supply of water.

The position of the Railway Company is that the appellants have no right to the use of water from the canal beyond that specified in the leases which it now desires to terminate; that the only *private* rights protected by the act of 1879 were those arising out of the leases then in existence, all of which have long since been terminated; and that if the act intended to protect any rights beyond this, such were *public* rights which have been terminated in the manner provided by law.

This contention of the appellee is, we think, unanswerable.

We need not stop to consider the argument of the Railway Company that the private rights which the appellants claim by virtue of the act of 1879 are so vague and indefinite as to be incapable of enforcement, for we think it has been settled by the former opinion of this court in *Hurt & Son* v. *Myers and Axtell, Receivers,* 83 Va. 167, 1 S. E. 911, that the identical portion of the act here under review gives no such private rights to such lessees.

In that case the receivers of the Richmond and Alleghany

Railroad Company notified certain lessees of the water power from the Lynchburg canal that at the termination of their leases the same would not be renewed except at an increased rate. The lessees having resisted such increase were summoned before the Circuit Court of the city of Richmond, under whose orders the receivers had been appointed, to show cause why they should not either cease using water or execute the required new contracts.

In their answers the lessees made the same defense as that asserted here, namely, that aside from their leases they were entitled, under the terms of the act of 1879, to a perpetual use of water from the canal; that their plants had been in existence for a long time, and that large investments had been made in them "upon the faith of a continuous supply of water power."

The circuit court entered a decree in which it held that the lessees were "not entitled by reason of the act of Assembly of 27th February, 1879 * * * or by any provision of the deed of conveyance from the James River and Kanawha Company to the Richmond and Alleghany Railroad Company, dated the 4th day of March, 1880, to a continuance or renewal of their respective leases beyond the term prescribed and contracted for in said leases respectively."

The decree then proceeded: "It is adjudged, ordered and decreed that no one of the said lessees has the right to further use of said water privileges under his lease, without a new contract therefor, and that such new contract, if one be made, is to be subject to the approval and confirmation of this court. And it is further ordered that the receivers have the right in the exercise of their discretion and the discreet management of the property confided to their charge, to shut off the water from each of the premises now supplied therewith, if no contract be made for the continued use thereof."

On an appeal taken from this decree by S. C. Hurt & Son, one of the lessees, this court said (83 Va., at p. 192, 1 S. E. 913)":

"The decree is clearly right. The language in question is plain and unambiguous, and we have neither power to change it, nor a doubt as to its construction. It is not enacted that all

existing water privileges shall be continued as they are; but that 'all existing contracts for water privileges * * shall be respected and maintained at rates not exceeding the present rates,' which means contracts executed, and binding on both sides, not future contracts, and still less contracts to be indefinitely continued at the option of the lessees. The evident purpose of the legislature was, by special enactment, to protect existing contracts for water privileges which had been entered into with the canal company, but not, in doing so, to impose upon the railroad company, as its successor, greater obligations in respect thereto than the canal company had assumed. * * * It is true that such contracts were already protected against impairment by both State and federal law, but [that] cannot change the language of the statute, or extend its operation to matters not embraced within its terms."

Thus we have clearly decided that the purpose of this portion of the act of 1879 was to protect "all *existing* contracts for water privileges"—those in effect at the time of the passage of the act.

It is true that that opinion said (83 Va. 167, at p. 193, 1 S. E. 911, at p. 913) that the provision requiring the railroad company to maintain its water supply at Richmond and at Lynchburg "was undoubtedly inserted in the interest of the manufacturing establishments in and near those cities, * * *." But there is no suggestion in this language that the provision reserved any *private* rights to any particular individuals. We think this requirement in the act was for the benefit of the public.

Indeed, in the final analysis, this is the argument of appellants, for they contend that any industry which might see fit to locate on the Lynchburg canal would be entitled to the privilege of obtaining water therefrom, at reasonable rates, upon the execution of a required contract therefor.

If this be true, then the duties placed on the railroad company by this clause in the act of 1879, with respect to the Lynchburg canal, were public duties, and the rights insisted upon by the appellants are public rights, such as the right to use of water, electricity, telephone facilities, and the like,

upon the execution of the usual contract therefor required by a public service corporation and the payment of the prescribed rate. But, as we have already seen, all public duties imposed upon this property have been terminated and this argument comes to naught.

█ Nor do we find any merit in the argument of the appellants that the Railway Company is estopped by its conduct from closing the canal and ceasing to furnish water to them.

It is admitted that each of the leases for the supply of water plainly provides for its termination at any time at the option of the Railway Company upon giving the required notice. Surely there can be no more solemn warning than one arising from the face of the title document itself that the supply of water may be thus discontinued. Cf. *Blanford* v. *Trust Company*, 142 Va. 73, 82, 128 S. E. 640. If the appellants, relying on an erroneous interpretation of the act of 1879, have enlarged their plants, why should the Railway Company suffer therefor?

█ On the whole our conclusion is that the appellants have no right to the use of water from the canal beyond that stipulated in their leases which the appellee company now seeks to terminate.

The decree is accordingly

*Affirmed.*