# Richmond

## CITY OF LYNCHBURG V. THE CHESAPEAKE AND OHIO RAILWAY COMPANY.

March 10, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*T. G. Hobbs* and *Robert D. Morrison,* for the appellant.

*T. Justin Moore, John L. Abbot, George D. Gibson, Samuel H. Williams* and *David H. Leake,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In June, 1933, The Chesapeake and Ohio Railway Company, sometimes hereinafter referred to as the Railway Company, filed an application before the State Corporation Commission asking, among other things, for authority to terminate all public duties imposed upon it in relation to the Lynchburg level of the James River and Kanawha Canal and associated properties, and for permission to abandon them and their use as a public way. After a protracted hearing the Commission entered an order granting the relief prayed for, with the express reservation that, for lack of jurisdiction of the subject matter of the private rights asserted by the city in the canal, such order did not affect the "rights, if any, which the city of Lynchburg may have in, to, or over the said properties for the purposes of its existing sewer system." This action of the Commission was affirmed by us in *City of Lynchburg* v. *Commonwealth,* 164 Va. 57, 178 S. E. 769.

After that decision the Railway Company served upon certain private industries located on or near the canal notice of its intention to discontinue furnishing water to them. Thereupon these industries filed their bill in the Corporation Court of the city of Lynchburg praying that the Railway Company be enjoined from closing the canal and discontinuing the water supply to them. A decree of

the lower court sustaining a demurrer to the bill and denying the relief sought was affirmed. *John H. Heald Co., et als.* v. *Chesapeake & O. Ry. Co.*, 168 Va. 128, 190 S. E. 325. We there held that the requirement of the sixth clause of section 1 of the Act of 1879 (Acts 1878-79, ch. 139, p. 118) that the Railway Company should maintain the water supply at the Lynchburg level, was for the benefit of the public and did not confer any private rights on the appellants in that suit beyond what was granted to them in their respective leases with the Railway Company.

In the meantime the city of Lynchburg had commenced the present suit by filing its bill in the Corporation Court of the city of Lynchburg praying "that a decree be entered perpetually enjoining the said Railway Company from closing said canal at the Lynchburg level or diminishing the flow of water therein below that in the canal at the time of the passage of the Act of February 27, 1879, or at least below the amount necessary to adequately carry off the sewage from the city's said sewers now emptying into said canal; and that this court enter a binding adjudication of right * * * adjudicating and declaring the right of the city of Lynchburg to require the canal to be kept open by the Railway Company as a perpetual outlet for said sewers, with sufficient water therein to carry off the sewage therefrom * * * ."

The relief prayed for was sought upon two grounds:

(1) That the city acquired a private right to have the canal kept open for its benefit under the sixth clause of section 1 of the Act of 1879; and

(2) "That it acquired prescriptive private rights to have the said canal maintained and to use the same as an outlet for its said sewers by adverse, exclusive and continuous uninterrupted use, with the knowledge and acquiescence of the owners of said canal for said purposes for a period of more than twenty years."

The city admits that since the institution of this suit the first ground relied upon has been disposed of adversely to it by the decision in *John H. Heald Co., et als.* v. *Chesapeake*

& O. Ry. Co., supra. Therefore, it now relies solely upon the latter ground.

According to the allegations in the bill the James River and Kanawha Canal, designed as a means of public transportation, was completed from Richmond to Lynchburg in 1840. This canal, now owned by The Chesapeake and Ohio Railway Company but abandoned as a means of public transportation since 1879, runs along the southwestern bank of the James River at the foot of the large hill or hills on which a substantial part of the city of Lynchburg is located. Thus the canal cuts off the access of the city to the river as an outlet for its sewer mains.

Beginning at least seventy-five years ago the city constructed its storm and sanitary sewers so as to empty into the canal. There are nine of these sewers which have been thus using the canal continuously for more than twenty years. The bill alleges that if the canal is closed as an outlet for these sewers, the city will be put to a large expense in order to extend them into the river.

From a decree sustaining a demurrer to and dismissing the bill the city has appealed.

The theory of the city's case is that since the abandonment of the canal as a means of public transportation in 1879, The Chesapeake and Ohio Railway Company and its predecessor in title have held it as private property, which became subject to the city's right to acquire by prescription an easement to use it as an outlet for its sewers without a diminution of the flow of water through it.

▇▇ It is undoubtedly true that so long as a public nuisance is not created, a city may acquire by prescription an easement to empty its sewers into the artificial channel of a privately owned canal. Farnham on Waters and Water Rights, p. 1759, sec. 543; id., p. 2408, sec. 820; Jones on Easements, sec. 799; 67 C. J., p. 904, sec. 335; 4 McQuillan Mun. Corp. (2d Ed.), pp. 321, 322, sec. 1558; City of Richmond v. Gallego Mills Co., 102 Va. 165, 171, 45 S. E. 877. The city argues that this same principle applies even though the canal is owned by a railway company, since in Chesa-

*peake & O. Canal Co.* v. *Great Falls Power Co.,* 143 Va. 697, 719, 129 S. E. 731, we held that title by adverse possession might be acquired to the unused portions of a railroad right of way and to the abandoned bed of a canal.

These general propositions the Railway Company does not question. But the claim of the city goes beyond the prescriptive right of merely emptying its sewage into the channel of the canal. It alleges in its bill of complaint that it has by prescription acquired the right to have the said canal kept up and maintained, at the expense of the Railway Company, as an outlet for the city's sewers, and it prays not only that the Railway Company be enjoined from closing the canal, but that it be required to maintain in the canal, at its (the Railway Company's) expense, a flow of water at least sufficient to carry off the sewage deposited therein.

There is no allegation that the canal has heretofore at any time been maintained for the city's benefit. Reduced to its final analysis the claim is that because the city has received incidental benefits for the prescriptive period by virtue of a structure maintained by the Railway Company on the latter's own land for its own purposes, the city is now entitled to have such structure thereafter perpetually maintained for the city's sole benefit at the Railway Company's expense, even though the latter has no further use for it. We think the mere statement of this proposition demonstrates its fallacy.

Even though it be assumed for the moment that the city is entitled by prescription to use the channel of the canal as an outlet for its sewers, it by no means follows that it has acquired the right to compel the Railway Company to maintain the canal at the latter's own cost and expense and to keep therein a sufficient flow of water solely for the purpose of carrying off the city's sewage.

█ It is well settled that in the absence of express contract an easement, such as is claimed here, imposes upon the owner of the servient tenement no obligation to do any positive act for the benefit of the dominant tenement. All

that can be required of the owner of the servient tenement is that he refrain from unlawfully interfering with the easement.

In *Tardy* v. *Creasy*, 81 Va. 553, 556, 557, 59 Am. Rep. 676, this court said: "An easement is a right which is appurtenant to the dominant tenement, and imposed upon the servient tenement; and it is important to mark that it is not imposed upon the person of the servient owner; therefore an obligation upon him to do something for the benefit of the dominant tenement is not an easement."

In Gale on Easements (11th Ed.), p. 443, the author says: "As a general rule, easements impose no personal obligation upon the owner of the servient tenement to do anything. Apart from any special local custom or express contract, the owner of a servient tenement is not bound to execute any repairs necessary to insure the enjoyment, or convenient enjoyment, of the easement by the owner of the dominant tenement."

See also, 2 Tiffany on Real Property (2d Ed.), p. 1198, sec. 348; 9 R. C. L., p. 798, sec. 54.

Therefore, we think the trial court correctly held that the city acquired by prescription no easement which placed upon the Railway Company any obligation to actively maintain in the canal a sufficient supply of water for the sole purpose of carrying off the city's sewage deposited therein.

In the oral argument before us the city abandoned the claim made in the trial court and in its briefs before us that there was an obligation on the Railway Company to maintain and repair the canal, or to take any positive action towards continuing therein an undiminished flow of water. But the city still insists that it has acquired, by adverse use for the prescriptive period, the right to prevent the Railway Company from doing anything on its part which will reduce the flow of water through the canal below its present level, and that the allegations in its bill are sufficiently broad to warrant injunctive relief to this extent at least.

There is no allegation in the bill of complaint that the flow of water can be maintained in the canal at its present level without positive action or expense on the part of the Railway Company. On the contrary the record in the case of *City of Lynchburg* v. *Commonwealth, supra,* discloses that it requires the operation of locks to maintain the water in this canal; that a portion of the canal traverses an aqueduct 140 feet long; and that the cost of maintaining these and the trestles over the canal involves an annual expense to the Railway Company of more than $20,000. This is not controverted by the city.

Therefore, under the circumstances here, to say that the Railway Company must passively refrain from doing anything to interfere with the continued flow of water through the canal is but another way of saying that it must actively do whatever may be necessary, at its own cost and expense, to maintain the water therein. Its duties and responsibilities would be identical in either case.

We thus see that in the final analysis the supposedly new contention of the city is in substance the same as that heretofore advanced and found to be without merit.

But there is another and fundamental reason why the contention of the city can not be sustained. The James River and Kanawha Canal, including the section here in controversy, was the outgrowth of various statutes enacted for the improvement of the James River and was for a paramount public purpose. The history of this undertaking has recently been reviewed by us in *City of Lynchburg* v. *Commonwealth, supra,* and *John H. Heald Co., et als.* v. *Chesapeake & O. Ry. Co., supra.* See also, *Old Dominion Iron & Nail Co.* v. *Chesapeake & O. Ry. Co.,* 116 Va. 166, 81 S. E. 108. What we said there need not be repeated here.

The Act of February 27, 1879 (Acts 1878-79, ch. 139, p. 118), authorizing the transfer of the canal to the Richmond and Alleghany Railroad Company (the predecessor in title of The Chesapeake and Ohio Railway Company), provided for the substitution of a railroad for the canal as a line of

commerce, but certain sections of the canal, including that at Lynchburg here involved, were required to be kept open. That these sections were required to be kept open for public purposes was settled by us in *City of Lynchburg* v. *Commonwealth, supra,* and *John H. Heald Co., et als.* v. *Chesapeake & O. Ry. Co., supra.*

It is apparent, therefore, from these decisions that neither the Railway Company nor the city of Lynchburg. occupies the position of an ordinary riparian owner with respect to the waters in this canal, which were thus affected with a public interest.

While there is some conflict on the subject we think the great weight of authority supports the proposition that no prescriptive right can be acquired in property affected with a public interest or dedicated to a public use. 19 C. J., p. 878, sec. 29; 76 Am. St. Rep. at pages 492-494, note.

In *Bellenot* v. *City of Richmond,* 108 Va. 314, 319, 61 S. E. 785, following the earlier decisions of this court there cited, we held that title to a part of a public highway could not be acquired by adverse possession. We applied this principle to a turnpike company in *Virginia Hot Springs Co.* v. *Lowman,* 126 Va. 424, 432, 101 S. E. 326.

In *Burbank* v. *Fay,* 65 N. Y. 57, it was held that an easement could not be acquired by prescription in the waters of a State canal. And the same principle has been applied to canals operated by corporations under State charters providing for the transportation of vessels or commodities for the public upon the payment of tolls. Farnham on Waters and Water Rights, pp. 467, 468, sec. 101; 61 L. R. A., p. 850, note; *Perrine* v. *Chesapeake, etc., Co.,* 9 How. (50 U. S.) 172, 186, 13 L. Ed. 92.

While we held in *Chesapeake & O. Canal Co.* v. *Great Falls Power Co., supra,* that this principle did not apply to the abandoned bed of a canal or to unused portions of a railroad right of way, that is not the situation here. There is no claim here that the canal was abandoned until the. recent proceedings before the Corporation Commission.

Furthermore, the prescriptive right of the city is here asserted not against the bed or channel of the canal—that is, the land over which the water flows. The claim is that the city is entitled by prescription to the undiminished flow of the water itself. And not until the recent proceedings in *City of Lynchburg* v. *Commonwealth, supra,* were the public purposes in the flow of water through the canal abandoned. Prior to that time, pursuant to statutory requirement, the canal had been maintained and the water continued therein for a public purpose. *John H. Heald Co., et als.* v. *Chesapeake & O. Ry. Co., supra.*

It follows, therefore, we think, that so long as the flow of the water was being maintained in the canal for a public purpose, the city could not acquire any right thereto by adverse use or prescription.

The conclusion we have reached makes it unnecessary that we pass upon the further and serious contention of the Railway Company that the allegations in the bill as a whole show that the city's use of the canal as an outlet for its sewers was permissive only and not hostile or adverse to the Railway Company's use thereof.

On the whole, we think the decree of the lower court is right and it is accordingly

*Affirmed.*