[No. 84828-9.   En Banc.]
Argued October 25, 2011.     Decided March 1, 2012.

WILLIAM H. KIELY ET AL., *Respondents*, v. KENNETH W. GRAVES ET AL., *as Trustees, and All Persons or Parties Unknown Claiming Any Right, Title, Estate, Lien, or Interest in the Real Estate Described in the Complaint, Appellants.*

*Philip A. Talmadge* and *Emmelyn Hart* (of *Talmadge/ Fitzpatrick*); *Frederick Mendoza* and *Maya Riley Mendoza-Exstrom (of Mendoza Law Center PLLC)*, for appellants.

*Richard L. Shaneyfelt*; and *Kenneth W. Masters* and *Shelby R. Frost Lemmel* (of *Masters Law Group PLLC*), for respondents.

¶1 MADSEN, C. J. — At issue in this review is whether homeowners William Kiely and Sally Chapin-Kiely may

claim adverse possession of an alley dedicated for public use. Relying on *Erickson Bushling, Inc. v. Manke Lumber Co.*, 77 Wn. App. 495, 891 P.2d 750 (1995), the trial court ruled that the Kielys established their adverse possession claim to the underlying fee interest held by their neighbors, Kenneth and Karen Graves, in an alley vacated by the city of Port Townsend. We hold that the city held an interest in the alley for use as a public thoroughfare and that RCW 7.28.090 precluded adverse possession of the alley while it was held for a public purpose. Because the city of Port Townsend did not vacate the alley until February 2009, its interest in the alley prevented the Kielys from obtaining the property through adverse possession.

## FACTS

¶2 The Kielys own real property in the city of Port Townsend next to real property owned by the Graveses. The disputed alley was dedicated to the city in 1908 by John and Mary Power through the following plat language: "[a]nd we do hereby dedicate to the Public for its use forever as Public thoroughfares the streets and alleys as shown on this plat." Ex. 27.

¶3 The plat describes an alley 15 feet wide, running along the length of the boundary between the Graves property to the south and the Kiely property to the north. For as long as anyone can remember, a hog wire fence has run along the southern boundary of the alley. The Graves property adjacent to the disputed alley has remained open space where the Graveses have planted fruit trees, berry vines, and garlic. Part of the Kielys' recently restored cottage encroaches upon the disputed alley.

¶4 In 2008, the Graveses filed a petition with the city to vacate the western half of the alley and merge it into their adjoining lands. The city held a public hearing on the application, which it processed according to the statutes and ordinances applicable to vacation. As conditions prec-

edent to vacating the alley, the city required the Graveses to pay for an appraisal of the alley, a survey of the alley, a lot line adjustment, and the appraised value of the alley.[1] The Graveses satisfied all of the city's financial conditions.

¶5 The city also required the Graveses to sign an indemnity and hold harmless agreement releasing the city from any future damage claims resulting from encroachments and/or any adverse possession claims.[2] The Graveses complied. Neither the city nor the Graveses were aware of any adverse possession claim upon the alley.

¶6 In February 2009, the Port Townsend City Council passed Ordinance 3005 to vacate the alley. The city then conveyed the vacated alley to the Graveses through a lot line adjustment recorded on March 2, 2009. The Kielys filed an action in the Jefferson County Superior Court on June 10, 2009, alleging ownership of the entire alley through adverse possession.

¶7 On March 26, 2010, visiting Judge Wood denied cross motions for summary judgment. Relying on *Erickson*, Judge Wood ruled that the city's easement did not preclude the Kielys from adversely possessing the Graveses' underlying fee interest in the disputed alley. Because satisfaction of the elements of adverse possession was in dispute, Judge Wood denied summary judgment.

¶8 In a bench trial, on July 2, 2010, Jefferson County Superior Court Judge Verser agreed that *Erickson* was controlling and concluded that the Kielys met the require-

---

[1] $10,000 was the appraised value of the property.

[2] The Kielys argue that this agreement is evidence the city recognized that the Graveses held the fee interest in the alley and that the disputed area could have been adversely possessed. However, this conclusion is in tension with the city's demanding the full appraised value of the alley as a condition of vacation. The city likely would not have requested the full value of the fee interest in the alley, unless it believed it owned the fee. If it believed it owned the fee, then presumably it would have understood the land could not be adversely possessed. Interestingly, the hold-harmless agreement does not specify the interest held by the city prior to vacation. It is possible the city did not know its quantum of title and believed the agreement to be a prudent means of confronting this uncertainty.

ments for adverse possession. The trial court entered a judgment and decree in favor of the Kielys. We granted direct review to decide whether the Kielys could assert adverse possession based on events that preceded vacation of the alley.

## ANALYSIS

¶9 As a threshold matter, the parties dispute the nature of title held by the city as a result of the Powers' 1908 dedication of the alley to the public for its use "forever as [a] public thoroughfare." Ex. 27. The Kielys assert that when property is dedicated to a municipality as a street or alley, the city receives only an easement, and the abutting owners retain title to the land. The Graveses contend that the Powers' dedication transferred to the city a fee simple that could not be adversely possessed by the Kielys because RCW 7.28.090 precludes adverse possession of land owned by the government. The Graveses also insist the trial court erred by not analyzing whether the Powers made a statutory or common law dedication.

¶10 The Kielys contend that our courts have consistently held that a city presumptively holds only an easement as a result of the dedication of land for use as a street or thoroughfare. *E.g.*, *Rainier Ave. Corp. v. City of Seattle*, 80 Wn.2d 362, 494 P.2d 996 (1972).

¶11 In *Finch v. Matthews*, 74 Wn.2d 161, 167-68, 443 P.2d 833 (1968), this court held that ordinarily, "the fee in a public street or highway remains in the owner of the abutting land, and the public acquires only the right of passage, with powers and privileges necessarily implied in the grant of the easement." The court noted, "This rule was [first] applied specifically to a street dedicated to the public through the recording of a plat in *Schwede v. Hemrich Bros. Brewing Co.*, 29 Wash. 21, 69 Pac. 362 (1902)." *Id.* at 168. Relying on *Schwede*, the court held that the city owned only an easement in the right-of-way it had received through a

dedication and that the original owner retained title to the property. *Id.* at 167-69.

¶12 The holdings in *Finch* and *Schwede* are consistent with numerous other decisions of this court. *Rainier Ave. Corp.*, 80 Wn.2d 362 (holding that absent an intent to convey a fee, a dedication for public park purposes creates a public easement only); *Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle*, 70 Wn.2d 222, 422 P.2d 799 (1967) (determining that a city may not require payment of one-half of appraised value of property in connection with street vacations because the city merely holds easements); *Rowe v. James*, 71 Wash. 267, 128 P. 539 (1912) (finding that the courts have uniformly held that a city acquires only an easement in a street in consequence of a dedication); *Burmeister v. Howard*, 1 Wash. Terr. 207, 1867 WL 5421, 1867 Wash. Terr. LEXIS 5 (holding that when an easement is taken as a public highway, the soil and freehold remain in the owner of the land encumbered only with the right of passage in the public).

¶13 The Graveses, however, attack this line of cases as the result of either an overly broad or an incorrect reading of *Burmeister* that fails to recognize the implications of a statutory dedication. *Burmeister*, 1 Wash. Terr. at 211-12, is the seminal case recognizing an easement presumption in land dedicated as a public highway and subsequent cases have relied on that decision. Meanwhile, other decisions such as *Karb v. City of Bellingham*, 61 Wn.2d 214, 377 P.2d 984 (1963), and secondary sources like 6 Washington State Bar Association, *Washington Real Property Deskbook* § 91.9 (3d ed. 2001) (*Deskbook*), discuss the importance of the distinction between common law dedication and statutory dedication for determining the nature of the interest the public acquires.

¶14 We agree with the Graveses that there is a distinction between common law dedications and statutory dedications. Common law dedications are controlled by common law principles, while statutory dedications are governed by

specific statutes. *See Karb*, 61 Wn.2d at 218-19. Another distinction between a statutory and a common law dedication is that the former operates by way of grant and the latter by way of equitable estoppel. *Id.* The title or right acquired by the public in a statutory dedication depends upon the language of a jurisdiction's dedication statute. DESKBOOK, *supra*, at § 91.9(2). In many jurisdictions, a statutory dedication conveys a fee interest to the public. *See Gen. Auto Serv. Station v. Maniatis*, 328 Ill. App. 3d 537, 765 N.E.2d 1176, 262 Ill. Dec. 568 (2002); *Nettleton Church of Christ v. Conwill*, 707 So. 2d 1075 (Miss. 1997). However, in other jurisdictions a statutory dedication may confer no further right than a mere easement. *See Heyert v. Orange & Rockland Utils., Inc.*, 17 N.Y.2d 352, 218 N.E.2d 263, 271 N.Y.S.2d 201 (1966); *City of Bartlesville v. Ambler*, 1971 OK 154, 499 P.2d 433; *Lee v. Musselshell County*, 2004 MT 64, 320 Mont. 294, 87 P.3d 423; *Mallory v. Taggart*, 24 Utah 2d 267, 470 P.2d 254 (1970).

¶15 Here, the Powers made a statutory dedication, evidenced by the presentment for filing of a plat and its subsequent approval by the city. *See* RCW 58.17.020(3); *Richardson v. Cox*, 108 Wn. App. 881, 891, 26 P.3d 970, 34 P.3d 828 (2001). Thus, we turn to the statutes.

¶16 In Washington a statutory dedication to a city or town is governed by RCW 58.08.015, which states:

> Every donation or grant to the public, or to any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on the plat of the town, or wherein such donation or grant may have been made, shall be considered, to all intents and purposes, as a quitclaim deed to the said donee or donees, grantee or grantees, for his, her or their use, for the purposes intended by the donor or donors, grantor or grantors, as aforesaid.

¶17 Statutory interpretation is a question of law. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Questions and conclusions of law are reviewed

de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

¶18 In *Rainier Avenue Corp.*, this court held that the language of RCW 58.08.015 does not convert the dedication of land to a conveyance of a fee. Rather, the reference to a quitclaim deed in the statute simply refers to the interest intended to be conveyed by the donor or grantor of the property. *Rainier Ave. Corp.*, 80 Wn.2d at 366-67.[3] The court stated that no additional language is required under the statutory dedication scheme to reserve the fee to the dedicators. *Id.* This is so, the court stated, because the fee in a public street remains in the owner of the abutting land and the public acquires only the right of passage, along with the powers and privileges necessary to enjoy that right. *Id.*[4]

¶19 The Graveses acknowledge that our cases have recognized a presumption that a statutory dedication of land for highway purposes constitutes only a public easement. However, they also contend that the nature of the interest conveyed through the dedication must be evaluated on a case by case basis. We agree.

¶20 " 'The intention of the owner is the very essence of every dedication.' "[5] *Frye v. King County*, 151 Wash. 179, 182, 275 P. 547 (1929) (quoting *City of Palmetto v. Katsch*, 86 Fla. 506, 510, 98 So. 352 (1923)). Intent must be adduced from the plat itself. *Id.* When an individual seeks to

---

[3] In connection with the vacation of streets, RCW 35.79.050 states, "No vested rights shall be affected by the provisions of this chapter."

[4] Indeed, the statute on street vacation, RCW 35.79.040, provides, "If any street or alley in any city or town is vacated by the city or town council, the property within the limits so vacated shall belong to the abutting property owners, one-half to each."

[5] A strong emphasis on intent is also consistent with this court's many railroad right-of-way cases. The conveyance of a right-of-way to a railroad may be in fee simple or may be an easement only. *Morsbach v. Thurston County*, 152 Wash. 562, 568, 278 P. 686 (1929). Thus, in construing the grant of a right-of-way, the intent of the parties is controlling. *Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 269, 273, 714 P.2d 1170 (1986); *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981); 4 RICHARD R. POWELL, REAL PROPERTY § 34.12 (2000); 2 AMERICAN LAW OF PROPERTY § 8.64 (A. James Casner ed., 1952).

dedicate a fee interest, "that intent should be clearly stated and the use should be unrestricted or, if the use is a condition, the condition should be clearly stated with a specific right of reversion." DESKBOOK, *supra*, § 91.9(1).

¶21 Some information can be deduced from this plat. Most significantly, when a dedication specifies that property is to be used as a thoroughfare, this is strong evidence of intent to grant only an easement. *See Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 738, 844 P.2d 1006 (1993); *Swan v. O'Leary*, 37 Wn.2d 533, 535-36, 225 P.2d 199 (1950); DESKBOOK, *supra*, § 91.9(1). Normally, the interest acquired by the public in land dedicated as a highway is only an easement. *State ex rel. York v. Bd. of County Comm'rs*, 28 Wn.2d 891, 898, 184 P.2d 577 (1947). Washington property experts have commented:

> Any deed to a local government specifically for highway, right of way, or any public purpose could be interpreted as a dedication conveying an easement only. If the intent is to grant a fee interest, that intent should be clearly stated and the use should be unrestricted or, if the use is a condition, the condition should be clearly stated with a specific right of reversion.

DESKBOOK, *supra*, § 91.9(1).

¶22 Here, the use is restricted by a condition the property be used as a thoroughfare, and there is no specific right of reversion provided. In our many railroad cases, we have held that when a grant specifies a strip of land is to be used for a particular purpose, for example as a right-of-way, the grant generally creates an easement. *Brown v. State*, 130 Wn.2d 430, 439-40, 924 P.2d 908 (1996); *Morsbach v. Thurston County*, 152 Wash. 562, 568, 278 P. 686 (1929). Conversely, when there is no such language specifying a particular use for the property, the deed will be construed to convey a fee. *Brown*, 130 Wn.2d at 439-40. The restriction on the alley for use as a thoroughfare is strong evidence that the Powers intended to convey an easement.

¶23 Because lines as well as words may be considered, one might infer meaning from the use of solid lines on this

plat. *See Cummins v. King County*, 72 Wn.2d 624, 627, 434 P.2d 588 (1967). Because solid lines separate the alley from the properties, it is possible the Powers intended to convey to the public the alley as an entirely distinct property interest. If this were accepted as true, then the Graveses would have had no interest for the Kielys to adversely possess until the city vacated the alley in 2009. Yet, the plat neither assigns meaning to the solid lines, nor includes anything but solid lines on the entire plat. Moreover, the Graveses fail to direct the court as to how the plat lines should be interpreted. Absent such argument, we decline to imply meaning into the plat's use of lines.

¶24 The duration of the interest is similarly unhelpful because either a fee or an easement can be dedicated to the public forever. *See* Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements From the Nineteenth to the Twenty-First Centuries*, 27 ECOLOGY L.Q. 351, 382 (2000).

¶25 We find nothing in the language of the Power plat to suggest that the original property owners intended to dedicate the alley property in fee to the city of Port Townsend.

¶26 The Kielys contend that because the city possessed only an easement, the Graveses may not rely on RCW 7.28.090 to defeat their claim to the alley through adverse possession. RCW 7.28.090 states:

> RCW 7.28.070 [establishing the standard for adverse possession under claim and color of title] and 7.28.080 [establishing the standard for adverse possession of vacant and unoccupied land] shall not extend to lands or tenements owned by the United States or this state, nor to school lands, *nor to lands held for any public purpose.*

(Emphasis added.) RCW 7.28.090 has remained unchanged during all times relevant to this case. *See Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 95 P. 278 (1908). A party

may not claim adverse possession of property held or controlled by a municipality for public use. *Gustaveson v. Dwyer*, 83 Wash. 303, 304-05, 145 P. 458 (1915). Land does not lose its character as a public property merely because no public funds are expended for the maintenance or upkeep of the public facility. *Goedecke v. Viking Inv. Corp.*, 70 Wn.2d 504, 509, 424 P.2d 307 (1964).

¶27 This case hinges on whether an easement dedicated for a public thoroughfare constitutes "lands held for any public purpose" under RCW 7.28.090. We hold it does.

¶28 Initially, it is significant to note that one clause of RCW 7.28.090 prohibits adverse possession of government owned property and another clause disallows adverse possession of "lands held for any public purpose." In *State v. Lundquist*, 60 Wn.2d 397, 403, 374 P.2d 246 (1962), the court noted, "A legislative body is presumed not to have used superfluous words." Therefore, we must give meaning to the "lands held for any public purpose" clause distinct from ownership. The legislature must have intended the clause to refer to land held by the government in something less than fee simple. An easement logically would be such a property interest.

¶29 "Property" is best described as certain rights pertaining to a thing, not the thing itself. *Eggleston v. Pierce County*, 148 Wn.2d 760, 783, 64 P.3d 618 (2003). Property is often analogized to a bundle of sticks representing the right to use, possess, exclude, alienate, etc. *Id.* An easement provides the right to use real property of another without owning it. *City of Olympia v. Palzer*, 107 Wn.2d 225, 229, 728 P.2d 135 (1986). The recipient of an easement is often called an "easement holder." *E.g., State v. Newcomb*, 160 Wn. App. 184, 191, 246 P.3d 1218 (2011). Presumably then, "lands held for any public purpose" is property in which the government holds some but not all rights. When the public holds an easement, the "lands held for any public purpose" prong of RCW 7.28.090 is satisfied, barring adverse possession claims against that property.

¶30 There is no question that land held for a street or highway is a public purpose.[6] In *State ex rel. York*, 28 Wn.2d at 898, this court noted that the interest acquired by the public in property dedicated for street and highway purposes is generally an easement. However, the court went on to say that regardless of the nature of the property interest acquired, the interest is one that is held in trust for the public. *Id.*

¶31 This case bears strong resemblance to *Rapp v. Stratton*, 41 Wash. 263, 83 P. 182 (1905). There the plaintiff brought an action alleging ownership of an alley that the plaintiff claimed the defendant had attempted to appropriate for her own by placing barriers and obstructions across the property. *Id.* at 263. The alley was a part of a lot deeded to the plaintiff by the defendant. *Id.* at 264. The defendant claimed the alley had been vacated for over 10 years and that he had acquired title through adverse possession. *Id.* The court rejected the defendant's claim of adverse possession, holding that the alley had not been vacated and that title to the alley could not be obtained through adverse possession because the property was held by the city as a trustee for the public and not as the property of the municipality. *Id.* at 266.

¶32 Here, as in *Rapp*, the city held the alley in trust for the public until it was vacated, thus precluding adverse possession prior to vacation by the city.

¶33 The trial court in this case felt bound by *Erickson*, 77 Wn. App. at 497-98, where the Court of Appeals determined an individual may adversely possess the underlying fee interest in land, despite a public easement. In *Erickson*,

---

[6] RCW 58.08.050 provides:

Whenever any city or town has been surveyed and platted and a plat thereof showing the roads, streets and alleys has been filed in the office of the auditor of the county in which such city or town is located, such plat shall be deemed the official plat of such city, or town, and all roads, streets and alleys in such city or town as shown by such plat, be and the same are declared public highways: PROVIDING, That nothing herein shall apply to any part of a city or town that has been vacated according to law.

the parties owned abutting properties divided by a section line. *Id.* at 496. The original plat dedicated an easement for a county road that straddled the section line and extended onto each property. *Id.* The road was never opened,[7] and Erickson's predecessor built a fence encroaching on his neighbor's property. *Id.* After the fence had stood for 40 years, Erickson filed an action to quiet title. *Id.* The court determined that the county's "equitable interest in the property" was insufficient to constitute " 'lands held for any public purpose.' " *Id.* at 497-98 (quoting RCW 7.28.090). Ruling that Erickson could adversely possess the property over which the county had an easement, the trial court quieted title to the disputed area in Erickson. *Id.* The Court of Appeals affirmed. *Id.* at 499. Review was not sought.

¶34 *Erickson*'s holding is not supported by statute or case law. First, the court did not explain why such an easement interest was insufficient to constitute "lands held for any public purpose" under RCW 7.28.090. *See Erickson*, 77 Wn. App. at 497-98 (the court cited *Finch*, 74 Wn.2d at 167-68, to support its conclusion, but that case only addresses the presumption that land dedicated to the public is an easement).

---

[7] Although not addressed by the *Erickson* court, the Graveses argue *Erickson* can be distinguished based on the applicability of RCW 36.87.090 in that case. The statute states:

> Any county road, or part thereof, which remains unopen for public use for a period of five years after the order is made or authority granted for opening it, shall be thereby vacated, and the authority for building it barred by lapse of time: PROVIDED, That this section shall not apply to any highway, road, street, alley, or other public place dedicated as such in any plat, whether the land included in such plat is within or without the limits of an incorporated city or town, or to any land conveyed by deed to the state or to any county, city or town for highways, roads, streets, alleys, or other public places.

RCW 36.87.090. Although the county road in *Erickson* was unopened for more than five years, it was undisputed that the dedication of the easement for a county road was done by plat. *See Erickson*, 77 Wn. App. at 496. Therefore, RCW 36.87.090 was not applicable in *Erickson* or in this case and does not distinguish one case from the other.

¶35 Second, we have held fee interests subject to public easements may be considered "mere future expectancies, 'bereft of enjoyment and incapable of pecuniary advantage'." *Mall, Inc. v. City of Seattle*, 108 Wn.2d 369, 377, 739 P.2d 668 (1987) (quoting *In re New York*, 278 N.Y. 163, 173, 15 N.E.2d 563 (1938)). We further stated, "Landowners with property abutting dedicated streets hold a reversionary fee interest to the center line of the street." *Id.* at 376 (citing *Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 567, 716 P.2d 855 (1986); RCW 35.79.040). An adverse possession claim cannot be asserted against a reversionary interest or a remainder interest until the future interest becomes a vested interest. *Martin v. Walters*, 5 Wn. App. 602, 490 P.2d 138 (1971); *Nw. Indus., Inc. v. City of Seattle*, 33 Wn. App. 757, 760, 658 P.2d 24 (1983).

¶36 Further, with the exception of a 95-year-old Kentucky Court of Appeals decision,[8] one unpublished Washington Court of Appeals opinion citing *Erickson*,[9] and the trial court here, it appears no other court has reached a conclusion similar to the *Erickson* court. Indeed, other jurisdictions have reached the opposite conclusion, finding it impermissible to adversely possess an underlying fee interest when the government holds an easement on the land. CAL. CIV. CODE § 1007 (stating "no possession by any person . . . no matter how long continued of any . . . easement, or other property whatsoever . . . dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof"); *Ellis v. Jansing*, 620 S.W.2d 569 (Tex. 1981) (concluding that Texas statutory law prohibits the adverse possession of a fee title subject to a 15 foot easement dedicated to the city of Waco); *United States v. Herbert Bryant, Inc.*, 740 F. Supp.

---

[8] *Home Laundry Co. v. City of Louisville*, 168 Ky. 499, 182 S.W. 645, 650 (1916) (holding an individual may adversely possess land despite a public easement if the individual provides notice to the municipality).

[9] *Jones v. Hall*, noted at 86 Wn. App. 1010, 1997 WL 243489, 1997 Wash. App. LEXIS 745.

863 (D.D.C. 1990) (holding that adverse possession cannot be used to acquire property affected with a public interest or dedicated to a public use in Virginia (citing *City of Lynchburg v. Chesapeake & Ohio Ry.*, 170 Va. 108, 195 S.E. 510 (1938))); *Hellerud v. Hauck*, 52 Idaho 226, 13 P.2d 1099 (1932) (concluding that land dedicated to a public use may not be acquired by adverse possession against the state); *McCuen v. McCarvel*, 263 N.W.2d 64 (Minn. 1978) (finding plaintiffs could not acquire an interest adverse to the public's easement rights prior to vacation of the town road).

¶37 Finally, there is no practical distinction between the overlying easement and underlying fee. When Erickson's predecessor built a barbed wire fence that encroached into his neighbor's property, he both initiated the statutory period for adverse possession against the neighbor and interfered with the public easement. *See Erickson*, 77 Wn. App. at 496-99. The court concluded, "Erickson does not attempt to extinguish the County's easement, restrict public access along the easement, or interfere with the County's use of the easement." *Id.* at 499. However, building a barbed fence through the easement restricts access and interferes with the public's rights. *See id.*

¶38 In this case, by using the alley for parking, gardening, and other purposes, the Kielys and their predecessors interfered with the public's potential or actual use of the easement. It is ultimately not possible to separate the adverse possession of the Graveses' fee simple interest from the encroachment upon the public easement. Because it is not permissible to encroach upon a public easement, it is not permissible to adversely possess the underlying fee interest. *See Baxter-Wyckoff Co. v. City of Seattle*, 67 Wn.2d 555, 559, 408 P.2d 1012 (1965). To decide otherwise would encourage encroachments upon public easements and hinder public use.

¶39 Because the city of Port Townsend held an easement interest until its vacation in 2009, RCW 7.28.090 prohibited the Kielys from obtaining title to the alley through adverse possession.

¶40 The trial court is reversed.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., and ALEXANDER and DWYER, JJ. PRO TEM., concur.